# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 17 C 0162 |
| v. ) | |
| ) | Judge John Z. Lee |
| DOMENIKO ELEZI, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Domeniko Elezi filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1]. Elezi claims that his guilty plea was involuntary because he agreed to plead guilty based upon promises by his attorney that Elezi would receive a custodial sentence of no greater than 57 months. Elezi also raises various reasons why he believes that his attorney was ineffective in his representation. But Elezi has not provided facts sufficient to overcome the presumption that he spoke the truth when he informed the Court, under oath, during his change-of-plea colloquy, that (1) he had received no promises that induced him to plead guilty, aside from those in his plea agreement, and (2) his decision to plead guilty was voluntary. Nor has Elezi demonstrated that his attorney's services were constitutionally ineffective. Accordingly, his motion is denied.

## Factual and Procedural Background

In March 2010, Elezi was charged by indictment with conspiracy to commit robbery, 18 U.S.C. § 1951(a), attempting to commit robbery, *id.*, and knowingly possessing a firearm in furtherance of a crime of violence, *id.* § 924(c). Indictment, No. 10 CR 217, ECF No. 1. He was released on a $50,000 bond, but soon fled the country. Minute Entry, No. 10 CR 217, ECF No. 70; Plea Agreement ("PA") ¶ 6, No. 10 CR 217, ECF No. 215. Elezi was arrested in Albania in August 2014. PA ¶ 6.

On July 28, 2015, shortly before his scheduled trial, Elezi pleaded guilty to Count One of the indictment, which charged conspiracy to commit robbery.[1] PA ¶ 6. In the plea agreement, Elezi admitted to conspiring with two co-defendants in the fall and winter of 2008 to rob a truck that they believed periodically traveled between Illinois and California carrying large amounts of cash. *Id.* Elezi and his co-defendants "staked out, followed, and conducted surveillance" on the truck over a period of months. *Id.* On December 7, 2008, Elezi and his co-defendants met and agreed to rob the truck, by restraining, threatening, or killing the occupants if necessary. *Id.* The next evening, the trio met with another person (who became a confidential informant) to discuss using a vehicle for the plot. *Id.* Elezi acknowledged that one of his co-defendants carried a firearm to that meeting and planned to use it during the robbery as well. *Id.* The trio then traveled to Chicago to retrieve another firearm. *Id.* Elezi and his co-defendants later purchased supplies to use in the

---

[1] The government later moved to dismiss the remaining charges. *See* Hr'g Tr. at 6, No. 10 CR 217, ECF No. 231.

2

robbery, including clothing for disguises, gas cans, duct tape for restraining the occupants of the truck, a scope for conducting surveillance, a knife, and two cans of pepper spray. *Id.* The trio waited near the location of their intended robbery, and saw the truck arrive, but eventually lost track of it after it drove away. *Id.*

In the plea agreement, Elezi also agreed to certain terms with regard to his sentencing range under the U.S. Sentencing Guidelines ("the Guidelines"). Elezi agreed that his base offense level was 20, *id.* ¶ 9(b)(ii), that he was subject to a two-level increase for obstructing justice, *id.* ¶ 9(b)(iv), that he was not eligible for a reduction for accepting responsibility, *id.* ¶ 9(b)(v), and that his criminal history category was I, *id.* ¶ 9(c). The agreement also set out the parties' positions with respect to a sentencing enhancement under U.S.S.G. § 2B3.1. The government contended that Elezi was eligible for a five-level enhancement for brandishing or possessing a firearm, *id.* § 2B3.1(b)(2)(C), while Elezi contended he was eligible for only a three-level enhancement for brandishing or possessing a dangerous weapon, *id.* § 2B3.1(b)(2)(E). PA ¶ 9(b)(iii). But Elezi also acknowledged that the parties' Guidelines calculations were only advisory, and that the Court would sentence him to any term it found reasonable within the maximums allowable by statute. *Id.* ¶ 8.

Elezi also waived certain rights, including as follows:

> Defendant [ ] understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. . . . [D]efendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the

> manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under [§ 2255]. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel . . . .

*Id.* ¶ 17(b). In the very next paragraph of the plea agreement, Elezi acknowledged that "Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights." *Id.* ¶ 18. And Elezi agreed that "no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause [him] to plead guilty." *Id.* ¶ 27.

At Elezi's change-of-plea hearing, the Court engaged in a colloquy with Elezi to determine the voluntariness of his guilty plea, as required by Federal Rule of Criminal Procedure ("Rule") 11(b). In particular, the Court found that Elezi was competent to enter his plea, explained that Elezi was waiving all of his appellate rights except as described in his plea agreement, and clarified that the Court was not bound by the parties' agreements with respect to the Guidelines range. Hr'g Tr. at 5, 11, 13–15. The Court explained:

> There are agreements relating to sentencing, one of which is that your lawyer and the government, each one of them, can recommend whatever sentence they deem appropriate . . . . I am not bound to follow any of the various possible penalties that might be assessed against you. That's a decision that I make . . . . In this case, the government believes the sentencing guideline which would apply to your case [is] at the bottom end of the range, 70 months up to 87 months imprisonment, and that is the guideline the government believes ought to apply here . . . . Your attorney and you do not agree with that entirely. The view that you and your attorney take is that the guideline range is 57

4

>months at the bottom to 71 months at the top . . . . [I]f I have a good reason, I do not have to sentence you within any particular guideline.

*Id.* at 13–14. Elezi said he understood the Court's explanation. *Id.* He did not inform the Court that he believed he would receive a custodial sentence of no more than 57 months.

Further, the Court asked several questions of Elezi, who was under oath, to ensure that the plea agreement contained the entirety of the parties' agreement. In particular, the Court asked Elezi twice if there were any "agreements or promises that [were] made to [him] that" were not contained in the plea agreement, if anyone had forced him to plead guilty, and if anyone had threatened him to plead guilty. *Id.* at 13, 15. Elezi answered "no" to each question. *Id.* What is more, the Court expressly asked Elezi if his decision to plead guilty was entirely voluntary, to which Elezi responded, "yes." *Id.* The Court then accepted Elezi's plea. *Id.* at 23. At no time during the hearing did Elezi tell the Court that his attorney had promised him a sentence no longer than 57 months.

Prior to the sentencing hearing, the probation officer made recommendations with respect to sentencing. The officer recommended applying the five-level enhancement for brandishing or possessing a firearm, U.S.S.G. § 2B3.1(b)(2)(C). Presentence Investigation Report ("PSR") ¶¶ 23–28, No. 10 CR 217, ECF No. 218. She explained that the enhancement applied because Elezi had pleaded guilty to a conspiracy charge and had constructively possessed a firearm, even though it was actually possessed by his co-conspirators. *Id.* Additionally, the probation officer recommended applying an additional two levels for Elezi's intent to restrain the

5

victims during the offense, U.S.S.G. § 2B3.1(b)(4)(B), as well as two levels for his obstruction of justice, *id.* § 3C1.1. PSR ¶¶ 29, 33. Finally, the probation officer agreed that a reduction was not available for acceptance of responsibility, U.S.S.G. § 3E1.1. PSR ¶ 36.

Elezi's retained counsel, Victor Ciardelli, objected to the five-level enhancement for brandishing or possessing a firearm, arguing that only a three-level enhancement was appropriate for Elezi's possession of a knife during the offense. Def.'s Sentencing Mem. at 2, 3–6, No. 10 CR 217, ECF No. 217. Ciardelli did not object to any of the probation officer's other Guidelines recommendations, *id.*, and the Court adopted the Presentence Investigation Report without any changes. *See* Sentencing Tr. at 29, No. 10 CR 217, ECF No. 230.

In the end, the Court imposed a custodial sentence of 70 months, which was below the applicable Guidelines range. *Id.* at 30. At no time during the sentencing hearing did Elezi state to the Court that his attorney had promised him a lower sentence. Elezi did not appeal, but he timely filed the present motion.

## **Legal Standard**

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A court may deny a § 2255 motion without an

6

evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013).

## Analysis

Elezi argues that he is entitled to relief under § 2255 for two reasons. First, Elezi contends that his guilty plea was the result of improper promises made to him by his counsel, and thus was involuntary. Second, he posits that his counsel was ineffective in a number of ways during plea negotiations and sentencing. The voluntariness of his plea and ineffective assistance of counsel are the two exceptions to Elezi's collateral-attack waiver, *see* PA ¶ 17(b), and the Court addresses each argument in turn.[2]

### I. Voluntariness of the Plea

Elezi's argument regarding the voluntariness of his plea appears primarily in his reply brief, *see* Reply Br. at 9–16, ECF No. 24, and for that reason the Court could conclude that his argument is waived. *See United States v. Vitrano*, 747 F.3d 922, 925 (7th Cir. 2014). However, because voluntariness of the plea goes to the validity

---

[2] The government appears to contend that Elezi has waived his ability to bring claims of ineffective assistance, *see* Gov't Resp. at 11–12, ECF No. 16, but that argument is clearly foreclosed by the language of Elezi's plea agreement. *See* PA ¶ 17(b); *see also United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (explaining that waivers should be enforced "only to the extent of the agreement").

7

of Elezi's conviction, his appeal waiver, and his agreements with respect to sentencing, the Court will address the merits of his argument.

Elezi contends that his guilty plea was involuntary because it was made based on his lawyer's inaccurate promises to him about the sentence he would receive. He alleges that Ciardelli made "certain specific sentence promises and guarantees in exchange for an additional $15,000 payment." Reply Br. at 10. The lawyer purportedly made these promises to Elezi, and, separately, to Elezi's parents. *Id*. Elezi submits his own affidavit, the affidavits of his parents, and copies of the checks his parents wrote to Ciardelli to prove the existence of these promises. *Id*. He contends that this evidence warrants an evidentiary hearing as to the voluntariness of his plea. *Id*. at 16.

In his own affidavit, Elezi contends that "[a]round the middle of June and the beginning of July, 2015," Ciardelli came to see him three times at the Metropolitan Correctional Center. Def.'s Ex. C, Elezi Aff. ¶ 1, ECF No. 24. Ciardelli presented Elezi with multiple proposed plea agreements, but he eventually brought him an "open plea" with the "ranges of 57–71 months and 70–87 months." *Id*. ¶¶ 2–5. Elezi alleges that Ciardelli told him "everything ha[d] been settled" and that he would "not get more than 57 months" if he signed the plea. *Id*. "Based on [Ciardelli's] promise," Elezi signed the agreement. *Id*.

Elezi's parents, Astrit and Burbuqe Elezi, also submitted affidavits in support of his motion. Astrit Elezi avers that he told Ciardelli that he would give him an extra $15,000 in fees if the lawyer could "get [his] son out now" or "reduce his sentence

8

by utilizing his connections" as a former prosecutor. Def.'s Ex. A, Astrit Elezi Aff. ¶¶ 4, 6, ECF No. 24. Ciardelli agreed, saying he would "talk to the right people and convince the prosecutor." Then, "[w]ith the extra payment," Ciardelli allegedly said, he could "get [Elezi] 'time served' or 'no more than 46 months.'" *Id.* ¶ 7. Astrit Elezi alleges that Ciardelli "made that promise many times over the coming weeks" and that his guarantee was "conveyed to Elezi." *Id.* ¶ 8. Elezi agreed to sign the plea, his father says, because "we all agreed it was best not to risk trial and instead sign the plea because [Elezi's] maximum sentence would be 46 months in the worst case scenario as the lawyer promised." *Id.* Burbuqe Elezi, Elezi's mother, confirms her husband's version of the events. Def.'s Ex. B, Burbuqe Elezi Aff., ECF No. 24. Further, she avers that she and her husband "told [Elezi] that the lawyer promised he would get no more than 46 months total if [he] signed the plea[,] and possibly time served." *Id.* at 2.

A valid guilty plea must be made voluntarily, intelligently, and knowingly. *Brady v. United States*, 397 U.S. 742, 747 (1970). A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea. *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989). A plea is knowing and intelligent when the defendant is competent, aware of the charges, and advised by competent counsel. *Id.* Further, under Rule 11(b), the "sentencing judge must develop, on the record, the factual basis for the plea," and if the plea was "induced by promises, the essence of those promises must in some way be known." *Santobello v. New York*, 404 U.S. 257, 261 (1971).

9

"[A] defendant who states at a Rule 11 plea colloquy that his plea was freely and knowingly given . . . faces an uphill battle in convincing a judge that his reasons for [withdrawing the plea] are fair and just[,] because representations made at a plea colloquy are under oath and are given a presumption of verity. *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (internal citation and quotation marks omitted). This presumption applies because the "purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (citation omitted); *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004). Because a defendant's statements at the plea colloquy are presumed true, the defendant bears a heavy burden of persuasion in showing that a good reason exists for the withdrawal. *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."). This is even more so in the context of a collateral attack under § 2255. *See Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986).

Here, the evidence offered by Elezi is not sufficient to warrant an evidentiary hearing. *See Key*, 806 F.2d at 139 (explaining that allegations of a promise made to the defendant should be supported by evidence of "what the terms of the alleged promises by counsel were; when, where, and by whom such promises were made; and the precise identity of any witnesses to the promise); *see also United States v. Sutton*,

No. 06-C-109-C, 2006 WL 1049472, at *5 (W.D. Wis. Apr. 18, 2006) (explaining that even specific allegations of such promises "may not be sufficient to warrant" an evidentiary hearing). Elezi has alleged only that, sometime in June or July 2015, his counsel told him that "everything ha[d] been settled" and that he would receive 57 months if he signed a plea agreement. Elezi Aff. ¶ 5. But, in the face of his statements during the plea colloquy, Elezi's own allegations are not enough to establish that Ciardelli in fact made such a promise. *See Salcido-Cruz v. United States*, No. 02 C 8951, 2005 WL 1270047, at *4 (N.D. Ill. May 25, 2005) ("Unsubstantiated allegations are entirely insufficient to cast doubt on the veracity of a Rule 11 colloquy and to overturn a plea agreement."); *United States v. Herrera-Valdez*, 945 F. Supp. 1133, 1137 (N.D. Ill. 1996) ("Only [Defendant's] unsupported claims counterbalance his statements in open court that he understood the consequences of his plea.").

Elezi argues, however, that he has offered more than his own statements—his parents submitted affidavits claiming similar circumstances. Astrit Elezi Aff.; Burbuqe Elezi Aff. He points to *Hernandez-Hernandez v. United States*, 904 F.2d 758 (1st Cir. 1990), in which the First Circuit found an evidentiary hearing warranted based on allegations of promises made by defense counsel, notwithstanding the defendant's representations at the plea colloquy. *See* Reply Br. at 14. But this case is not like *Hernandez-Hernandez*. In that case, five witnesses submitted nearly identical affidavits corroborating the defendant's claim that his lawyer had promised him a ten-year sentence on a specific date. 904 F.2d at 761. Here, Elezi's parents undermine his assertions as much as they corroborate them. For example, they state

11

that Ciardelli told them that Elezi would receive no more than 46 months of imprisonment, and Elezi's mother states that she relayed this to Elezi. Astrit Elezi Aff. ¶ 8; Burbuqe Elezi Aff. at 2. But according to Elezi, his understanding was that his maximum custodial sentence would be 57 months. Elezi Aff. ¶ 5. It is difficult to square these accounts. Additionally, it is unclear when Ciardelli allegedly made the statements to Elezi's parents in relation to the statement he supposedly made to Elezi himself.[3]

What is more, the plea colloquy thoroughly exhausted the topic of promises. The Court asked Elezi multiple times if he had received any promises outside the plea agreement, if he knew what the possible sentences were under the plea agreement, if he understood that the Court would impose any sentence it found reasonable, and if his plea was knowing and voluntary. Hr'g Tr. at 11–15. Elezi provides no persuasive reason for why he perjured himself during the change-of-plea hearing, if he in fact had the understanding that he now claims. Given the vague and inconsistent nature of Elezi's proof, the Court concludes that the presumption of verity accorded to Elezi's statements at the plea colloquy has not been overcome. *See Hutchings*, 618 F.3d at 699; *Chavers*, 515 F.3d at 724.

## II. Ineffective Assistance of Counsel

Elezi next argues that Ciardelli rendered constitutionally ineffective assistance in a variety of ways, such as by failing to argue that he was innocent of the

---

[3] In his reply brief, Elezi tries to explain the discrepancy, stating that he and his parents discussed it and concluded that 57 months was still better than the low end of the potential guideline range. Reply Br. at 10. But none of the affidavits actually bears this out.

12

conspiracy, inadequately arguing for a lower Guidelines range, failing to file a notice of appeal, and failing to communicate with him. His claims of ineffective assistance must satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that Ciardelli's performance was constitutionally deficient, *i.e.*, that his representation "fell below an objective standard of reasonableness" as measured against "prevailing professional norms." *Id.* at 688. Second, Elezi must show that any error Ciardelli made caused him prejudice. *Id.* at 692.

### A. Failure to Argue Lack of a "Substantial Step"

Elezi first contends that his counsel provided ineffective assistance in allowing him to plead guilty to the conspiracy, contending that there was no evidence that he took a "substantial step" toward the commission of the robbery. § 2255 Mot. at 6–7, ECF No. 1. But he confuses *attempt*, which requires a "substantial step" toward commission of the underlying offense, with *conspiracy*, which requires only that the defendant knowingly and intentionally enter into an agreement to commit a crime. *See United States v. Conley*, 875 F.3d 391, 398 (7th Cir. 2017) (describing the elements of attempt and conspiracy). In any event, Elezi admitted to sufficient facts in his plea agreement to allow the Court to find him guilty of a conspiracy, so he cannot show prejudice. *See* PA ¶ 6.

### B. Failure to Correct the Sentencing Calculation

Elezi next challenges his Guidelines calculation, contending that his lawyer rendered ineffective assistance by failing to prevent the application of one enhancement and by failing to seek certain reductions.

13

First, he argues that he should not have received a five-level enhancement for brandishing or possessing a firearm pursuant to U.S.S.G. § 2B3.1(b)(2). § 2255 Mot. at 17. He points out that he personally did not carry a firearm to stake out the truck, and argues that the enhancement does not apply unless a weapon is pointed at a specific individual or group of people. *Id.* But his attorney made similar arguments at the sentencing phase, *see* Def.'s Sentencing Mem. at 3–6, so it is unclear how Elezi believes his counsel rendered ineffective assistance. Additionally, case law amply supports the application of the enhancement under the facts Elezi admitted to in his plea agreement. *See United States v. Villegas*, 655 F.3d 662, 674–75 (7th Cir. 2011) (affirming use of five-level enhancement where the defendant agreed that his co-conspirator would carry a firearm during a robbery but was arrested before the robbery took place); *United States v. Dorsey*, 209 F.3d 965, 966–67 (7th Cir. 2000) (affirming use of five-level enhancement where the defendant contributed money to buy guns and equipment for the robbery but did not know any other details about it and did not participate); *United States v. Jones*, 950 F.2d 1309, 1316–17 (7th Cir. 1991) (affirming use of five-level enhancement where the defendant conspired with others to commit a bank robbery and knew that a firearm would be possessed, even though the robbery never occurred). Thus, Elezi cannot show he was prejudiced by counsel's performance.

Second, Elezi contends that he should have received a reduction in his Guidelines range for accepting responsibility under U.S.S.G. § 3E1.1. § 2255 Mot. at 15–16. Of course, Elezi admitted in his plea agreement that he was not entitled to

such a reduction, *see* PA ¶ 9(b)(v), so he must be arguing that his counsel was ineffective in advising him to sign the agreement despite it containing that provision. The Government, however, points out that he also agreed that he had obstructed justice by fleeing the jurisdiction and the country, *see id.* ¶ 9(b)(iv), and so he was not entitled to a reduction for accepting responsibility. *See* Gov't Resp. at 19; *United States v. Hacha*, 727 F.3d 815, 818–19 (7th Cir. 2013) ("In general a defendant who obstructs justice must, to obtain the [acceptance of responsibility] discount nevertheless, show either that the obstruction was trivial, putting the government to no added expense . . . or that he had taken more than the routine steps that, in the absence of such obstruction, normally earn the discount."). Elezi has not made any showing (nor could he) that his flight to Albania was trivial, or that he went above and beyond merely pleading guilty to accept his responsibility for the crime. Accordingly, the Court cannot conclude that his attorney rendered ineffective assistance by failing to seek a reduction under U.S.S.G. § 3E1.1.

Finally, Elezi contends that he should have received a "minor role" adjustment under U.S.S.G. § 3B1.2. § 2255 Mot. at 18–19. However, he does not explain how he was "less culpable than the average participant" in the conspiracy, *see United States v. Doe*, 613 F.3d 681, 687 (7th Cir. 2010). And he would not be able to make such a showing. Elezi bought supplies for the robbery, attended multiple planning sessions, and personally staked out the truck with the intent to participate in the robbery. *See* PA ¶ 6. His counsel was not ineffective for failing to seek a reduction to which he clearly was not entitled.

## C. Failure to File a Notice of Appeal

Elezi next maintains that Ciardelli rendered ineffective assistance by failing to file a notice of appeal on Elezi's behalf, despite Elezi's instruction that he do so. § 2255 Mot. at 8–11. As noted above, Elezi agreed not to appeal his conviction or his sentence as part of his plea agreement. PA ¶ 17(b). He argues that, notwithstanding his waiver of appeal, Ciardelli should have filed a notice of appeal. Reply Br. at 3–9.

However, as Elezi is aware, *see* Reply Br. at 3–6, the Seventh Circuit has considered his position and rejected it. "A lawyer who respects his client's formal waiver of appeal does not render objectively deficient service, and the waiver (coupled with the plea itself) shows that [the client] did not suffer prejudice even if his lawyer should have filed a notice of appeal." *Nunez v. United States*, 546 F.3d 450, 453 (7th Cir. 2008); *see also Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016).[4] To hold otherwise, the court reasoned, would require counsel to abdicate his duty to avoid frivolous litigation and ensure the client the benefit of a plea bargain. *Nunez*, 546 F.3d at 453.

Here, Elezi does not clarify exactly what issues he intended for Ciardelli to raise on appeal, or whether or not those issues were within the scope of the waiver. And although he *now* raises issues outside the scope of the waiver—namely, counsel's

---

[4] Elezi is correct to point out that other circuits have taken a different position, *e.g.*, *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006), but it is the law of the Seventh Circuit that governs here. Elezi is also correct that the Seventh Circuit has previously concluded that a defendant was entitled to have his attorney file a notice of appeal. *See Heiss v. United States*, 24 F. App'x 599, 602 (7th Cir. 2001). However, *Heiss*, a nonprecedential disposition in any event, was decided years before *Nunez* and *Solano*, so it has been effectively overturned.

effectiveness and the voluntariness of his plea—he does not contend that he wanted to raise the same issues on direct appeal. Rather, he appears to argue that his counsel was required to file a notice of appeal no matter what issues he wanted to raise. *See* Reply Br. at 3 ("[Elezi] was highly upset and generally unhappy with how things turned out."). But under *Nunez*, Ciardelli did not render constitutionally ineffective assistance for refusing to file a notice of appeal on Elezi's behalf in this circumstance. *See Solano*, 812 F.3d at 577; *Nunez*, 546 F.3d at 453.

### D. Failure to Communicate

Lastly, Elezi argues that his attorney provided ineffective assistance by failing to communicate with him and his family for the last year. § 2255 Mot. at 11–12. He contends that he has asked for his "Court papers" but never received them, and speculates that his attorney "tried his best to have [his] One Year Time Bar exhausted so [he] would be unable to file" a § 2255 motion based on ineffective assistance of counsel. *Id.* Elezi cannot pursue an ineffective-assistance claim on this basis. For starters, he has not made clear exactly what documents he sought from his counsel or how he might have used them. Thus he cannot establish the required "prejudice" for an ineffective-assistance claim. *See Strickland*, 466 U.S. at 687. Similarly, he cannot establish prejudice based on his attorney's supposed attempts to keep him from filing a § 2255 motion—he *did* file such a motion. And Elezi does not clarify what other arguments or evidence he could have presented had his attorney maintained communications with him.

17

## **Conclusion**

For the reasons stated herein, Elezi's § 2255 motion [1] is denied.  The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Elezi has not made a substantial showing that reasonable jurists could debate whether his motion should have been resolved in a different manner.  *See* 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)).  Civil case terminated.


**IT IS SO ORDERED.**              **ENTERED    10/17/18**

*[signature]*

_____

**John Z. Lee**
**United States District Judge**